UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

KYLE RAY GRIFFITH,                  )
                                    )
                    Plaintiff,      )
                                    )
          v.                        )    No. 2:22-cv-00467-JPH-MG
                                    )
JAY HENDRIX,                        )
C. HOLCOMB Lt.,                     )
ANGELISE Sgt.,                      )
FRANK VANHILL Warden,               )
                                    )
                    Defendants.     )

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Kyle Ray Griffith, an inmate at Wabash Valley Correctional Facility, filed this action under 42 U.S.C. § 1983 alleging that Defendants Jay Hendrix, Christopher Holcomb, Everado Angeles-Mora, and Frank Vanihel[1] subjected him to unconstitutional conditions of confinement in violation of the Eighth Amendment. Defendants have moved for summary judgment. Dkt. [61]. For the reasons below, that motion is **GRANTED IN PART AND DENIED IN PART**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the

---

[1] The complaint and current docket caption misspell the names of Defendants Angeles-Mora and Vanihel. The Court will direct the clerk to correct their names.

1

record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
### Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Griffith and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. Parties

Mr. Griffith has been incarcerated at Wabash Valley since June 2021, being housed in segregation the entire time. Dkt. 63-1 at 13 (Griffith deposition).

Warden Vanihel has served as warden at Wabash Valley since July 2020. Dkt. 63-10 at ¶ 3 (Vanihel declaration).

Jay Hendrix is employed as Safety Hazard Manager at Wabash Valley. Dkt. 63-11 at ¶ 2 (Hendrix declaration). Part of his duties are to ensure the facility is up to code with regulations from, among other agencies, the Indiana Department of Environmental Management and the Environmental Protection Agency. *Id.* at ¶ 4.

Lt. Christopher Holcomb is "responsible for the management, supervision, and safety of the facility, offenders, correctional sergeants, and correctional officers." Dkt. 63-4 at ¶ 5 (Holcomb declaration). The job description for an IDOC lieutenant states that one of their "essential functions" is "to direct staff regarding the maintenance and cleanliness of the facility." Dkt. 67 at 23.

Sgt. Everado Angeles-Mora is "primarily responsible for supervision of officers and assist[ing] them as needed, including the management, supervision, and safety of the facility, offenders, and correctional officers." Dkt. 63-9 at ¶ 4 (Angeles-Mora declaration).

### B. Mr. Griffith's Time in Cell B708

On September 7, 2021, Mr. Griffith was moved into cell B708 West in the Secured Confinement Unit ("SCU") at Wabash Valley. Dkts. 63-3 at 3 (Griffith's location history); 68 at ¶ 4 (Griffith's declaration). After moving in, Mr. Griffith

observed what looked like mold around the sink, cell door, cuff port, and air vent. Dkt. 68 at ¶ 4. Mr. Griffith also started experiencing health problems around this time, such as a serious cough, stomach cramps, and migraines. *Id.* He also noticed similar possible mold growth in the 700 range's dayroom. *Id.* at ¶ 5. Between September 2021 and January 2022, Mr. Griffith's health problems worsened to include blackouts, nose bleeds, diarrhea, fatigue, and fevers. *Id.* at ¶ 6. On January 13, 2022, Mr. Griffith had a visit with Wabash Valley medical staff, who took his vitals and said he "looked fine." *Id.* at ¶ 7.

Mr. Griffith has designated as evidence a grievance from January 18, 2022, requesting that "someone please come clean the mold out of my vent." *Id.* at 54. There is no designated evidence that any Defendant had personal knowledge of this grievance.

On January 25, 2022, Mr. Hendrix, Lt. Holcomb, Sgt. Angeles-Mora, and a non-defendant officer came to inspect his cell based on complaints of mold and human waste on the range. *Id.* at ¶ 8. Warden Vanihel had asked Mr. Hendrix to look at the SCU because of several inmates' complaints about mold. Dkt. 63-10 at ¶ 9. Mr. Griffith heard Mr. Hendrix tell Sgt. Angeles-Mora that there was mold all over Mr. Griffith's cell and Mr. Griffith was advised that Lt. Holcomb would address the situation after COVID-19 restrictions were lifted. Dkt. 63-10 at ¶ 8. However, "no cleaning crew ever addressed the mold issues" even after the restrictions were lifted. *Id.* This is the only time Sgt. Angeles-Mora had any interaction with Mr. Griffith relevant to this case, as he did not usually work in

4

the SCU but happened to be filling in for another officer that day. Dkt. 63-9 at ¶¶ 6, 14.[2]

On January 26, 2022, a Wabash Valley nurse emailed Lt. Holcomb that Mr. Griffith had submitted a healthcare request complaining of black mold in his cell. Mr. Hendrix received a response to this email, and he responded, "We looked at his cell on Tuesday, pictures were taken and no mold was found. The pictures were sent to Mr. Wellington."[3] Dkt. 63-13.

**C. Mr. Griffith's Time in Cell B1105**

In late January or Februrary 2022, Mr. Griffith was moved to cell B1105 West in the SCU. Dkt. 63-3 at 2. This cell also had numerous apparent mold growths in it. Dkt. 68 at ¶ 9. Mr. Griffith began coughing up blood and having chest pains after moving into this cell. *Id.* He was seen by medical staff on February 14, who took his vitals and sent him back to his cell. *Id.* Mr. Griffith did not attempt to clean cell B1105 during the time he was in it. Dkt. 63-1 at 39. Mr. Griffith also contracted COVID in early or mid-February 2022 and

---

[2] Mr. Griffith has submitted declarations from two inmates, one (Trae Thompson) who resided in the 500 range of the SCU beginning in April 2022 and another (Carrington Cook) who resided in cell B708 sometime in 2022 after Mr. Griffith left it and who also claims to have seen mold in it. Dkt. 67 at 10-11 and 57-59. The Court agrees with Defendants that these declarations are irrelevant to the conditions of confinement Mr. Griffith experienced during an earlier time frame and, as to Mr. Thompson, who resided in a different range altogether. *Cf. Love v. Nicholson*, 2022 WL 267598 at *3 (S.D. Ind. Jan. 28, 2022) (citing affidavit from inmate who resided in allegedly mold-contaminated cell for three months immediately before the plaintiff moved into it). In any event, for summary judgment purposes, the Court accepts that Mr. Griffith saw mold in cells B708 and B1105.

[3] This appears to refer to Thomas Wellington, American Correctional Association manager at Wabash Valley. *See* dkt. 63-8 at 5.

5

experienced severe symptoms from it, including "puking blood" and severe kidney pain. Dkt. 63-2 at 10-11.

On February 10, 2022, Lt. Holcomb intercepted a message Mr. Griffith sent to his then-fiancée, stating that he was extremely ill. Dkt. 63-4 at ¶ 17. Lt. Holcomb immediately requested that Mr. Griffith be "pulled out and checked by medical when she gets here. Get eyes on him now to ensure he is ok in his cell right now." Dkt. 63-6.

On February 16, 2022, Mr. Griffith wrote a grievance, which was noted as received by a grievance specialist on February 22, alleging "there is poop, black mold and other unknown substances all over the wall in the day room walls on 1100 Range West." Dkt. 63-7 at 3. The grievance also alleged that Mr. Griffith had had "respiratory illness for 3 months" because of poor environmental conditions. The grievance specialist forwarded this grievance to Lt. Holcomb who sent a reply email on that same day to Tristan Payne and Christopher Sanders, cc to Thomas Wellington and Shelby Crichfield, "Address this tonight make sure the range worker has the chemicals and a scratch pad or something to clean this wall correctly." *Id.* at 1.

After Lt. Holcomb acknowledged the existence of mold in cell B708, Mr. Griffith frequently sent request slips about the mold to him and verbally complained to him "every time he walked on the range." Dkt. 63-2 at 16. Lt. Holcomb would generally respond, "yeah, we're going to see what we can do," but "then nothing would happen." *Id.* at 17.

6

Mr. Griffith acknowledged that some of the common areas were cleaned after that:

> They did come around with a scratch pad and some kind of pink chemicals and scratched all of the gray stuff off the walls in the day room, and they came around for the whole year after that spraying the front of our cells with bleach water, where the little holes I was talking about with the fur growing in them, then opening our pipe chases, after I got moved out of that cell, and spraying with bleach water, and the shower sometimes.

Dkt. 63-2 at 17.

### D. Mr. Griffith's Move from Cell B1105

On March 14, 2022, Mr. Griffith was moved into cell B109 West in the SCU. Dkt. 63-3 at 2. On March 17, he passed out in his cell and hit the back of his head after experiencing severe chest pains and leg cramps and had to be extracted from the cell. Dkt. 68 at ¶ 10. However, Mr. Griffith did not observe any mold inside of cell B109 West and his complaints only related to cells B708 and B1105. Dkt. 63-1 at 39.

### E. Warden Vanihel's and Lt. Holcomb's Actions

Warden Vanihel was aware of some complaints from inmates about mold between September 2021 to March 2022. Dkt. 63-10 at ¶¶ 6-7. Warden Vanihel denies that he knew about Mr. Griffith's complaints during this time, *id.* at ¶ 8, and Mr. Griffith designates no evidence showing otherwise. When walking the ranges, Warden Vanihel did not observe what he believed to be mold, though he did sometimes note what appeared to be mildew where some inmates covered air vents. *Id.* at ¶¶ 10-11. "Out of an abundance of caution," and "right after the

height of the COVID-19 pandemic," Warden Vanihel arranged for cells to be power-washed, detailed, and repainted as needed. *Id.* at ¶ 12 (recalling that this cleaning occurred in late 2021 or early 2022). Dkt. 63-4 at ¶ 13. Mr. Griffith testified that it occurred after he left cell B1105. *See* dkt. 63-2 at 17.

As the officer in charge of cleanliness of the SCU, Lt. Holcomb held "cleanest range" competitions and awarded the winning range a special meal. Dkt. 63-4 at ¶ 12. He also sent multiple emails to other staff at Wabash Valley during this time frame, encouraging better compliance with cleanliness and sanitation standards, including the provision of cleaning supplies to inmates, and expressing frustration when his standards were not met. Dkt. 63-8.

### F. August Mack Inspection

Warden Vanihel arranged for an outside environmental services company, August Mack, to perform a "Targeted Mold Assessment" at Wabash Valley. *Id.* at ¶ 15. On April 3, 2022, an August Mack employee inspected parts of cell blocks 700 and 900 in the SCU—specifically, cells 707, 902, 903, and 905, and the HVAC system or mechanical chases between cells 901 and 902 and cells 705 and 706. Dkt. 63-12 at 1 (August Mack report). The report noted a few areas of "minor" suspected mold growth throughout the ranges. *Id.* at 3-4. The humidity level was measured to be well below a level that would promote mold growth. *Id.* at 5. Ultimately, the report concluded, "these minor areas of mold [do] not present a significant concern to the occupants (inmates or IDOC staff). However, these areas should be appropriately cleaned to remediate the minor mold

impacts identified." *Id.* at 5-6. The report included photographs of the inspected areas, including inside shower and dayroom areas. *Id.* at 8-20.

### G. Procedural History and Mr. Griffith's Allegations

Mr. Griffith's complaint alleges that he was subjected to unconstitutional conditions of confinement in violation of the Eighth Amendment. Dkt. 1. The screening order allowed only Eighth Amendment conditions-of-confinement claims against Defendants Vanihel, Hendrix, Holcomb, and Angeles-Mora. *Id.* at 8-9.[4] Mr. Griffith did not file an amended complaint or a motion to reconsider the screening order.

Defendants moved for summary judgment. Dkt. 61. After Mr. Griffith filed his response and Defendants filed a reply, Mr. Griffith filed a belated surreply. Dkt. 74. The Magistrate Judge allowed the filing as timely but specifically noted that his order did not "constitute a finding that the surreply is otherwise proper under Southern District of Indiana Local Rule 56-1(d)." Dkt. 75. A surreply is authorized only when the movant cites new evidence in the reply or objects to the admissibility of evidence cited in the response and, even then, provides that a surreply must be limited to the new evidence and objections. Defendants did not cite new evidence in their reply or object to Mr. Griffith's evidence, aside from arguing that it was irrelevant or did not create genuine issues of material fact.

---

[4] Although the complaint also mentioned human waste, it focused on alleged black mold exposure. To the extent Mr. Griffith now implies that he received substandard medical care during the time in question, the Court dismissed any such claims at screening because of Mr. Griffith's failure to identify any medical staff members as defendants or tying any of the named defendants to the allegedly inadequate medical care. Dkt. 14 at 6. The Court also dismissed any claims related to the processing of Mr. Griffith's grievances. *Id.* at 7, 9.

Therefore, the Court will not consider the surreply in ruling on the summary judgment motion.

### III.
### Discussion

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions." *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A conditions-of-confinement claim includes both an objective and subjective component. *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019). Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety." *Id.* (cleaned up). Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind — that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720. Proving the subjective component is a "high hurdle" that "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotations omitted). Neither "negligence [n]or even gross negligence is enough[.]" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008).

The presence of excessive mold within a prison may constitute an objectively serious risk to health and safety. *See, e.g.*, *Bd. v. Farnham*, 394 F.3d 469, 486–87 (7th Cir. 2005). However, not every exposure to a potential environmental hazard in prison amounts to a violation of the Eighth

Amendment. *See Carroll v. DeTella*, 255 F.3d 470, 473 (7th Cir. 2001) ("[F]ailing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not [cruel and unusual punishment]."); *see also McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993) (inmate's exposure to moderate levels of environmental contaminants did not violate the Eighth Amendment, because such exposure "is a common fact of contemporary life and cannot, under contemporary standards, be considered cruel and unusual").

Also, "'[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). For this purpose, each defendant is considered independently. *Id.*

## A. Objective Component

The Court will accept for summary judgment purposes that mold was present in Mr. Griffith's cell during the relevant timeframe and presented a serious risk to Mr. Griffith's health. The Court notes that although the April 2022 August Mack report stated that the level of mold its employee observed did "not present a significant concern to the occupants" of Wabash Valley, dkt. 63-12 at 5, (1) the employee did not directly observe either Cell B708 or Cell B1105 and (2) the evaluation was conducted several weeks after Mr. Griffith left those cells. Also, to the extent the report included photographs of alleged low levels of mold, again they do not depict Cell B708 or Cell B1105 and how they would have appeared when Mr. Griffith was in them. And although photographs purportedly

11

were taken of Cell B708, those photographs cannot currently be located. The Court presumes for purposes of summary judgment that the photographs would have supported Mr. Griffith's claim of excessive mold if they did exist and would have indicated that the mold posed a serious risk to his health.

### B. Subjective Component

Mr. Griffith designates no evidence showing that any Defendant was aware of his specific complaints about mold in his cell prior to January 25, 2022. Although Mr. Griffith receives "the benefit of conflicting evidence and reasonable inferences," he still must "produce evidence sufficient to establish [the] element[s] essential to" his claims. *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022).

When analyzing the subjective component of Mr. Griffith's claims as to all Defendants, the earliest starting point for measuring when they might have acted with deliberate indifference to his health and safety is January 25, 2022, when the inspection of his cell took place. Moreover, Mr. Griffith admits that after being moved to a different cell on March 14, 2022, he had no more concerns about mold.  So, the relevant timeframe is January 25, 2022 – March 14, 2022.

### 1. Warden Vanihel

Mr. Griffith asserts that Warden Vanihel must have known of a mold problem in the SCU because of a prior decision from this Court denying summary judgment to defendants from Wabash Valley (not including Warden Vanihel) who allegedly deliberately ignored a mold problem in SCU cell B104. *Love*, 2022 WL 267598 at *3-4. But that order was issued on January 28, 2022—after Warden

Vanihel had directed Mr. Hendrix to begin looking into a possible mold problem in the SCU. And although it's undisputed that Warden Vanihel knew of complaints about mold in the SCU, Mr. Griffith designates no evidence showing that Warden Vanihel observed or otherwise knew of the conditions in Mr. Griffith's cell or in the 700 range where Mr. Griffith's cell was located.

Indeed, Mr. Griffith testified in his deposition that the reason he named Warden Vanihel as a defendant was "because he runs the whole facility, so he's got to be aware of what's going on, or he should be." Dkt. 63-2 at 15. Mr. Griffith designates no evidence of discussions with Warden Vanihel or otherwise showing that Warden Vanihel knew of the conditions in Mr. Griffith's cell. *Id.* at 19.  In the absence of designated evidence showing that Warden Vanihel had personal knowledge of Mr. Griffith's complaints about the conditions in his cell, Warden Vanihel cannot be held liable. *See Townsend v. Fuchs*, 522 F.3d 765, 775 (7th Cir. 2008) ("[B]ecause Townsend points to no evidence showing that [the warden] either observed Townsend's cell personally or was informed of his specific situation, he would be unable show that she acted with deliberate indifference by failing to remedy the conditions in his cell."); *cf. Haywood v. Hathaway*, 842 F.3d 1026, 1032-33 (7th Cir. 2016) (holding prison warden was not entitled to summary judgment on conditions-of-confinement claim regarding plaintiff's cell, where warden "had been apprised of the specific problem with the physical condition of [the plaintiff's] cell").

Warden Vanihel is entitled to summary judgment.

### 2. Sgt. Angeles-Mora

In support of this claim against Sgt. Angeles-Mora, Mr. Griffith argues that "he's partially responsible because he was aware of the situation. Didn't do anything to remedy it." *Id.* at 18. It's undisputed, however, that Sgt. Angeles-Mora had only one interaction with Mr. Griffith in relation to the claims in this case, when he was filling in for another officer in the SCU and was present at the inspection of his cell on January 25, 2022. The designated evidence shows that in response to Mr. Griffith complaining once to him about mold in his cell, Sgt. Angeles-Mora reported those concerns to the Lieutenant on the unit and Jay Hendrix. Dkt. 63-9 at 2 ¶ 10. As there is no designated evidence from which a jury could find that Sgt. Angeles-Mora was deliberately indifferent to Mr. Griffith's complaint about mold, he is entitled to summary judgment.

### 3. Mr. Hendrix

Regarding his claim against Mr. Hendrix, Mr. Griffith argues "[r]ight when they acknowledged there was mold present, they should have came in with some type of cleaning agents or something. They didn't do anything." *Id.*

The designated evidence shows that Mr. Hendrix delegated or referred responsibility for addressing the mold complaints in the SCU to Lt. Holcomb. There is no evidence that Mr. Hendrix was alerted, during the relevant time frame, that Lt. Holcomb was not adequately addressing the issue of mold in Mr. Griffith's cell. As with Warden Vanihel, Mr. Griffith indicated during his

deposition that he was suing Mr. Hendrix based on his job description or title.[5] Dkt. 63-2 at 14. Mr. Griffith also testified, after initially stating Mr. Hendrix did nothing in response to grievances about the mold, that "I take that back. They sent the mold assessment in. So somebody had to put that in motion." *Id.* at 15-16. Furthermore, there is only evidence of one grievance being filed during the six weeks Mr. Griffith was in Cell B1105, and it was addressed by Lt. Holcomb. Dkt. 63-7. There is no evidence Mr. Hendrix was aware of this grievance.

It is not an Eighth Amendment violation for a prison official to assign a subordinate to investigate and attend to a prisoner's complaints, unless the supervisor becomes aware that the subordinate is not adequately addressing those complaints. *See Johnson v. Snyder*, 444 F.3d 579, 586-87 (7th Cir. 2006) (Warden not deliberately indifferent to prisoner's medical needs where evidence suggested "the Warden was aware of the problem and believed that his subordinates were attending to the issue"). Mr. Griffith has not designated any evidence that would allow a jury to find that Mr. Hendrix acted with deliberate indifference to the alleged mold in Mr. Griffith's cell, during the six weeks after Mr. Hendrix became aware of it, and directed Lt. Holcomb to address the issue, and before Mr. Griffith was moved to a mold-free cell.

### 4. Lt. Holcomb

In support of summary judgment, Defendants point to Lt. Holcomb's testimony that he "never observed mold in Mr. Griffith's cell, or any cell he was

---

[5] When asked why he was suing Mr. Hendrix, Mr. Griffith stated, "he's the director of safety and sanitation, I believe. That's one of his titles, I think." Dkt. 63-2 at 14.

housed in." Dkt. 63-4 at 3. Mr. Griffith responds with evidence that Lt. Holcomb "left me in the cell after they admitted there was mold in the cell and in the vent without cleaning anything" and did not arrange for any cleaning of the cell. *Id.* at 16. Mr. Griffith also testified about a conversation on January 25, 2022, involving Mr. Hendrix, Lt. Holcomb, and Sgt. Angeles-Mora about black mold in his cell's "chase" that supplied air to his cell. Dkt. 63-2 at 13. Mr. Griffith further testified that he frequently complained directly to Lt. Holcomb about the mold in his cell. So, the Court must assume for purposes of summary judgment that Lt. Holcomb knew there was black mold present in Mr. Griffith's cell. Dkt. 63-2 at 16 (Mr. Griffith's deposition testimony that he told Lt. Holcomb about mold in his cell "every time he walked the range" and "sent request slips to him:"); Dkt. 63-2 at 13. Even so, Mr. Griffith still must designate evidence from which a jury could reasonably conclude that Lt. Holcomb had a culpable state of mind, that is, he was "subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference." *Thomas*, 2 F.4th at 720.

Defendants designate evidence regarding instances when Lt. Holcomb took or directed action to ensure that the range, day room, and cells were being properly cleaned. Dkts. 63-7 at 1; 63-8. Defendants further designate evidence showing that Lt. Holcomb took prompt action to ensure Mr. Griffith's safety upon learning that he was sick. Dkt. 63-6. This designated evidence could support the conclusion that Lt. Holcomb wasn't deliberately indifferent to the risk posed to Mr. Griffith by the black mold in his cell. But it would have to be evaluated against evidence that could reasonably support the opposition conclusion, that

is, Mr. Griffith's testimony that he repeatedly told Lt. Holcomb about the black mold in his cell and Lt. Holcomb didn't take responsive action. There is also designated evidence that the cleaning solution provided to inmates to clean their cells was "watered down" and ineffective in removing mold and preventing it from returning, dkt. 63-1 at 30-34, from which a jury could reasonably infer that Lt. Holcomb knew that cleaning methods being used for individual cells were ineffective in removing the mold in Mr. Griffith's cell. Despite that, Mr. Griffith remained in the cell with allegedly nothing being done to address the situation. And unlike Warden Vanihel or Mr. Hendrix, the evidence indicates that Lt. Holcomb had direct day-to-day responsibility for the conditions of Mr. Griffith's unit, including its cleanliness.

In sum, there is designated evidence in the record from which a jury could find that Lt. Holcomb was aware of a specific severe mold problem in Mr. Griffith's cells and the ductwork leading to them no later than January 25, 2022, and that existing measures for inmates to clean their cells had by then necessarily been proven to be ineffective in removing mold. From there, a jury could reasonably conclude that Lt. Holcomb was deliberately indifferent to the presence of black mold in Mr. Griffith's cell. Lt. Holcomb is therefore not entitled to summary judgment. *See Board v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005) (holding that the defendants could not avoid liability for exposure to various environmental contaminants—including black mold—by ordering the "flimsy, non-productive band-aid procedure of merely vacuuming the grates" when they knew that procedure would be ineffective).

17

### C. Qualified Immunity

Lt. Holcomb also asserts that he is entitled to qualified immunity. Dkt. 62 at 22–24. Qualified immunity "shields a government official from suit for damages when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Sabo v. Erickson*, 128 F.4th 836, 843 (7th Cir. 2025) (en banc) (cleaned up). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* (cleaned up). Although qualified immunity is an affirmative defense, the plaintiff has the burden of defeating it once a defendant raises it. *Archer v. Chisolm*, 870 F.3d 603, 613 (7th Cir. 2017).

To overcome the defense, a plaintiff must show that: (1) the defendant violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct. *Sabo*, 128 F.4th at 843. In the analysis, the Court must "assume the disputed facts in the light most favorable to the plaintiff, and then decide, under those facts, whether [Lt. Holcomb] violated any of [Mr. Griffith's] clearly established constitutional rights." *Board*, 394 F.3d at 476.

Lt. Holcomb's qualified-immunity argument, however, does not view the designated evidence in Mr. Griffith's favor. Instead, he seeks qualified immunity based on factual assumptions that "Plaintiff's cell was inspected by the Defendants, and no mold was observed. It was ensured that cleaning supplies

were provided to Plaintiff twice a week, and that the common areas were properly cleaned immediately after receiving a report of concerns." Dkt. 62 at 23-24. And in his reply brief, he similarly argued that he's entitled to qualified immunity because "Plaintiff's cell was inspected by the Defendants, and no mold was observed." Dkt. 72 at 23.

As discussed above, there are questions of fact regarding whether Lt. Holcomb observed mold in Mr. Griffith's cell when he inspected it, whether Mr. Griffith repeatedly told Lt. Holcomb that there was black mold in his cell, and whether the cleaning supplies provided to inmates were effective in removing mold. Viewing these disputed facts in the light most favorable to Mr. Griffith as the Court must, Mr. Griffith has shown that Lt. Holcomb "violated a constitutional right." *Board*, 394 F.3d at 476–77. The next question is whether the specific right was clearly established at the time of the challenged conduct.

The "difficult part" of this prong of the qualified-immunity test is "identifying the level of generality at which the constitutional right must be clearly established." *Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013). A "high level of generality" is not appropriate; instead, the question is "whether the law was clear in relation to the specific facts confronting the public official when he acted." *Id.* Mr. Griffith cites *Board v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005) and *Johnson v. Coffee*, Case No. 1:19-cv-3313, 2021 WL 1814927, at *6 (S.D. Ind. May 5, 2021) for the proposition that he had a clearly established right to not be housed for several months in cells that were contaminated with black mold with no effective remediation taken. Lt. Holcomb does not attempt to

distinguish or even address these cases, arguing that Mr. Griffith "failed to point to any analogous case that would show that Defendants are not entitled to qualified immunity." Dkt. 72 at 8. And he repeats that Mr. Griffith has not met his burden of proof because he has not shown that Defendant had "knowledge of any mold present near Plaintiff or in his cell." *Id.* at 8.

*Board* establishes that known hazardous environmental contamination like black fiberglass dust and black mold constitutes deliberate indifference when it is not reasonably addressed. 394 F.3d at 485–86 ("There is no question that exposing prisoners to conditions" such as these satisfied "the objective prong of the test for an Eighth Amendment violation."). Given the disputed issues of material facts and precedent putting Lt. Holcomb on notice it would violate Mr. Griffith's clearly established Eighth Amendment rights to knowingly house him for several months in cells that were contaminated with black mold without taking effective remedial steps, Lt. Holcomb is not entitled to summary judgment based on qualified immunity. *See id.* (affirming the denial of qualified immunity).

## IV.
## Conclusion

The **clerk is directed** to change the name on the docket of Defendants "Angelise" to "Everado Angeles-Mora," Frank "Vanhill" to "Vanihel," and "C." Holcomb to "Christopher Holcomb."

Defendants' motion for summary judgment, dkt. [61], is **GRANTED** as to Warden Vanihel, Sgt. Angeles-Mora, and Mr. Hendrix, and **DENIED** as to Lt. Holcomb. The **clerk is directed** to terminate Warden Vanihel, Sgt. Angeles-Mora,

and Mr. Hendrix as defendants on the docket. No partial final judgment will issue at this time.

The Court prefers that Mr. Griffith be represented by counsel for purposes of settlement or trial regarding the remaining claims against Lt. Holcomb. The **clerk is directed** to send Mr. Griffith a motion for assistance recruiting counsel with his copy of this Order. Mr. Griffith has **through October 15, 2025**, to file a motion for counsel using this form motion or to inform the Court that he wishes to proceed pro se. Once the motion has been ruled on and counsel has been recruited, the magistrate judge is asked to schedule a telephonic status conference to discuss further proceedings.

**SO ORDERED.**

Date: 9/18/2025

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

KYLE RAY GRIFFITH
179323
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

Magistrate Judge Garcia's Chambers